THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ERIC ANTOINE, | § | |
| JACORDIAN GUILLORY | § | |
| TERRANCE MOTON, | § | |
| AND RODERICK WHITE, | § | Civil Action No. _____ |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | |
| | § | |
| SUNBELT RENTALS, INC. | § | |
| formerly EMPIRE SCAFFOLDING | § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendant* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW Eric Antoine ("Mr. Antoine"), Jacordian Guillory ("Mr. Guillory"), Terrance Moton ("Mr. Moton") and Roderick White ("Mr. White") (collectively "Plaintiffs") filing this, their Original Complaint wherein they describe the unlawful employment practices Defendant Sunbelt Rentals, Inc. formerly Empire Scaffolding ("Defendant" or "Sunbelt") subjected them to during their employment based on their race (African-American). In addition to their collective claim of race discrimination under Section 1981 and Title VII, Plaintiff Antoine brings a claim of retaliation under Section 1981 and Title VII, and Plaintiff White brings a claim of disability discrimination under the ADA as more fully set forth below. In support of their causes of action, Plaintiffs respectfully shows the Court as follows:

### I. JURISDICTION, PARTIES, AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiffs pursuant to 28 U.S.C. §1331, 42 U.S.C. §1981 ("Section 1981"), Title VII, 42 U.S.C. §2000e *et. seq*. ("Title VII"),

the anti-retaliation regulations set forth by Section 1981 and Title VII, and 29 U.S.C. §§2601-2654 the Americans with Disabilities Act of 1990 as amended ("ADAAA").

2. Plaintiffs Eric Antoine, Jacordian Guillory, Terrance Moton and Roderick White are African-American males. At all times relevant to Plaintiffs claims as set forth herein, Plaintiffs' employment was protected by Section 1981 and Title VII. Further each of the Plaintiffs named herein were, at all relevant times, employees as has been interpreted under Section 1981 and Title VII.

3. Further, Plaintiff Roderick White has a disability as defined under the ADAAA based on Defendant's actions toward him because of his weight and/or size. Plaintiff White's weight and/or size had a substantial impact and effect on Defendant's decision to disallow him to work and to terminate his employment. At all times relevant to Plaintiff Roderick White's claims herein, his employment with Defendant was protected by, Section 1981, Title VII, and the ADAAA. Mr. White was, at all relevant times, an employee within the meaning of each of these statutes.

4. Defendant, Sunbelt Rentals, Inc. formerly Empire Scaffolding ("Sunbelt") is a corporation operating in Texas and was at all times relevant to the facts and claims in this Complaint, Plaintiffs' private-sector employer within the meaning of Section 1981, Title VII and the ADAAA,

5. Plaintiffs intend to serve Defendant with this Complaint by and through its registered agent, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.

6. The employment practices alleged to be unlawful within this lawsuit were committed within the Southern District of Texas, Galveston Division. Venue is appropriate in this Court.

## VICARIOUS LIABILITY--RESPONDEAT SUPERIOR

7. Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or

representatives and management did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment with Defendant, or in the furtherance of Defendant Sunbelt's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant's officers, owners, servants, employees, management and/or representatives.

8. All conditions precedent to the filing of this lawsuit have occurred.

## II.   EXHAUSTION OF ADMINSTRATITIVE REMEDIES; THE EEOC ISSUES DETERMINATION LETTERS IN THE EMPLOYEES' FAVOR

9. *Pro se*, Mr. White filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about May 4, 2017, wherein he averred that Defendant engaged in discrimination against him based on his race (African American), color (black) and disability (real and/or as perceived by Defendant) when he was subjected to termination for alleged reasons and rules that Defendant did not subject other nonblack employees to, or terminate over. In his Charge, Mr. White also complained about the hostile work environment that Defendant created for Black employees who did not speak Spanish and about Defendant's failure to take action when Defendant's Hispanic employees made racially offensive statements against Defendant's Black employees, subjecting Black employees, like him, to intimidation and racial harassment at work. The EEOC assigned Mr. White's Charge the No. 846-2017-17975.

10. Similarly, *pro se*, Mr. Antoine filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about October 23, 2017, wherein he averred that Defendant engaged in

discrimination against him when he was denied a lead position, forced to obtain a fit-for-duty exam for pretextual reasons based on race, called "boy" and then terminated after complaining about race discrimination for allegedly violating a nonexistent cell phone policy. In his Charge, Mr. Antoine describes the hostile work environment to which Defendant subjected him where he and other African-American employees were not considered for lead positions and were subjected to open racial comments and intimidation. Mr. Antoine also complained that he was retaliated against by Defendant for his protected complaint that he was being called "boy" by Defendant moving him to the less desirable night shift and then terminating his employment for pretextual reasons a week later. The EEOC assigned Mr. Antoine's Charge the No. 460-2017-02773.

11. During its investigation of Plaintiff White and Plaintiff Antoine's Charges, the EEOC investigated other of Defendant's black employees' employment experience with Defendant who, like Mr. White and Mr. Antoine, had faced a discriminatory work environment, disparate treatment and discriminatory and pretextual rules and terminations to which Defendant did not subject its Hispanic employees. The EEOC's investigation included Plaintiffs Jacordian Guillory and Terrance Moton.

12. After investigation, the EEOC issued Plaintiff White and Plaintiff Antoine each a letter of determination.

13. In its letter of determination to Plaintiff White, the EEOC found that Mr. White had met all requirements to establish a *prima facie* case of race discrimination under Title VII and disability discrimination under the ADA of 1990, as amended. The EEOC further found that during this time period, the remaining group of Black males referred from the Beaumont office were also discharged for various reasons proffered by Defendant. Based on the evidence, the EEOC found that Mr. White's, and the other black employees' race was the motivating factor.

14. On February 5, 2021, the EEOC found that Mr. Antoine had met all requirements to establish a *prima facie* case of race discrimination and retaliation under Title VII and that evidence collected suggested that the Foreman of the site held animus against Black employees. On February 5, 2021, the EEOC also found that Mr. White had met had met all requirements to establish a *prima facie* case of race discrimination under Title VII and disability discrimination under the ADA of 1990, as amended. The EEOC further found that during this time period, the remaining group of Black males which were included in its investigation and who were also discharged for various pretextual reasons proffered by Defendant were unlawfully terminated based on the race. Based on the evidence, the EEOC found that Mr. White's, and the other black employees' race was the motivating factor.

15. Upon information and belief, conciliation efforts having failed, the EEOC issued Mr. Antoine and Mr. White their Right-to-Sue letters on March 3, 2021. Mr. Antoine, Mr. White and the other investigated employees Mr. Guillory and Mr. Moton file suit within 90 days of Mr. Antoine and Mr. White's receipt of their Right-to-Sue letters.

### III. FACTUAL BACKGROUND

16. Defendant is an equipment rental company that focuses on the rental and sales of construction and scaffolding equipment. Each of the Plaintiffs had worked for the Defendant in some capacity prior to January 1, 2017. In approximately March 2017, Defendant hired each of the Plaintiffs to perform scaffolding work at one of its customer's worksites located at 1602 CR 723, Quintana, Texas 77541 which is in Brazoria County, Texas.

17. Defendant hired Plaintiff Antoine on or about March 5, 2017, as a Scaffold Carpenter at an hourly wage of $18.00 per hour; however, Mr. Antoine had sought the position of Lead Man earning $22.00 per hour.

18. Defendant hired Plaintiff Guillory on or about March 5, 2017, as a forklift driver at an hourly wage of $ 14.00 per hour.

19. Defendant hired Plaintiff Moton on or about March 5, 2017, as a lead scaffold man at an hourly wage of $ 23.00 per hour.

20. Defendant hired Plaintiff White on March 4, 2017, as an E/D Helper 2 at an hourly wage of $15.00 per hour.

21. Defendant failed to provide any of the Plaintiffs with an employee handbook or its work rules upon their hire in 2017.

22. Immediately upon reporting to duty, Plaintiffs found themselves subjected to discriminatory comments about their race. Plaintiff Guillory who wears his hair in locks was called a mop head, Plaintiff White was told by Defendant's foreman that black people like him like to eat fried unhealthy food, Plaintiff Antoine was told he was sweating more than black people normally do. Plaintiffs were immediately subjected to comments and treatment motivated by their race.

23. On or about March 8, 2017, approximately three days after hiring Plaintiffs, Defendant's foreman determined to subject Plaintiff Antoine and Plaintiff White to a mandatory fit-for duty examination before they could return to work.

24. Defendant told Plaintiff Antoine that he would need to obtain a fit-for-duty certification to return to work because he was observed sweating and Defendant's foreman didn't believe that *Blacks sweat that hard*.

25. On that same day, Defendant instructed Plaintiff White to obtain a fit-for duty certification allegedly because Plaintiff White requested a ride to the worksite which was approximately one-mile from Defendant's home-base.

26. Hispanic employees routinely requested and/or were driven to the worksite like

Plaintiff White requested but were not instructed to obtain a fit-for-duty certification to return to work like Defendant instructed Plaintiff White that day.

27. Defendant did not cover the cost of Plaintiff Antoine's or Plaintiff White's fitness tests nor did Defendant tell Plaintiff Antoine or Plaintiff White that their tests would be covered but needing their jobs, Plaintiff Antione and Plaintiff White were forced to find and pay for their tests on their own.

28. Both employees returned to work on or about March 9, 2017 with certification of their ability to work but Defendant immediately turned them both away and told them that their doctor's releases and/or certifications were insufficient and that they were required to go to Defendant's preferred clinic to obtain certification.

29. Needing their jobs, both Plaintiff Antoine and Plaintiff White complied, went to Defendant's preferred clinic, and again paid for their examinations.

30. Plaintiff Antoine successfully obtained his certification and returned to work with his release on or about March 14, 2017.

31. That same day, one of Defendant's Hispanic employees called "boy" to refer to Plaintiff Antoine. Taken offense and finding the racially insensitive word inappropriate, Plaintiff complained that he had been referred to as a boy which be believed to be discriminatory. During his interaction, Plaintiff Antoine also reminded and spoke to the foreman about his desires to be considered and promoted to a Lead position.

32. After Mr. Antoine's complaint, instead of considering him for a Lead position, Defendant informed Mr. Antoine that he would be transferred to night shift effective March 19, 2017. Mr. Antoine did not request nor wish to be placed on the night shift.

33. When Mr. Antoine arrived for his first night shift, no one would pick him up to take

him to the assignment. He was forced to go home that night without pay for that night.

34. On the second night, Defendant told him for the first time that he needed a TWIC card to enter the facility, which Mr. Antoine did not possess. Defendant did not allow Mr. Antoine to work that night. Again, Mr. Antoine lost wages. Defendant then placed Mr. Antoine back on the daytime shift.

35. That same evening, Mr. Antoine telephoned the Safety Coordinator, Kim Vickery, to inquire about a safety position. Ms. Vickery, who was driving, requested that Mr. Antoine call her again in the morning.

36. When Mr. Antoine retuned to work the next day on March 21, 2017, he sent Defendant's Safety Coordinator a text before the beginning of his shift.

37. Shortly thereafter, Defendant's General Foreman and Recruiter asked Mr. Antoine whether he had a cell phone, which Mr. Antoine confirmed and told him he had left in the lunch room (like Defendant's Hispanic employees) prior to beginning his shift.

38. In response, Defendant's Foreman informed Mr. Antoine, for the first time ever, that he could not have a cell phone on the job site and abruptly terminated Mr. Antoine's employment.

39. Having already faced the impromptu but mandatory fit-for duty test based on his race, a discriminatory slur, and the run-around with his work shifts, Mr. Antoine believed that Defendant's job decisions were unlawfully being made against him based on his race and determined that he would notify and complain to Site Manager Joe Trainer that he was being targeted and set up based on his race.

40. In response, Mr. Trainer told Mr. Antoine that his termination would be temporary and that he would be able to return to work with Defendant in 30 days.

41. Thirty days later Mr. Antoine followed up with Mr. Trainer, however, Defendant denied him employment as Mr. Trainer had earlier stated.

42. Pro se, Mr. Antoine filed a charge of discrimination based on race discrimination and retaliation with the EEOC on or about October 23, 2017.

43. Unlike Plaintiff Antoine, Plaintiff White was unable to return to work on March 14, 2017 because upon his first examination by Defendant's preferred provider, he was told that he would have to submit to another examination and demonstrate that his blood pressure was not an issue before he would be allowed to return to work with a fit-for-duty certification.

44. Plaintiff White Informed Defendant of its preferred medical provider's decision and instructions on that same day.

45. On or about March 20, 2017, Plaintiff White returned to Defendant's medical provider for another examination, and this time he successfully passed the examination and obtained a fit-for-duty certification from Defendant's provider. Accordingly, he returned to work on March 21, 2017 with his certification in hand.

46. Upon his return, Defendant's foreman pulled Mr. White aside and told him that he was being terminated for "no call, no show." This was untrue. Mr. White had called to notify Defendant of its medical provider's instructions and returned to work the next full day after he obtained his fit-for-duty certification.

47. Defendant did not care; Defendant had its own motives in mind on March 21, 2017 and determined that —like Plaintiff Antoine—it wanted Plaintiff White gone.

48. On the same day that Defendant terminated Plaintiff Antoine and Plaintiff White, Defendant's foreman complained to Plaintiff Moton that he was building a scaffold too slowly. In response, Plaintiff Moton told Defendant's foreman that he was performing up to pace and in a

safe manner. In response, Defendant's foreman pointedly told Plaintiff Moton that he would bring in some of his Hispanic guys who would work faster, and he fired Mr. Moton on the spot.

49. Approximately one week later, Defendant fired Plaintiff Guillory when Plaintiff Guillory paused from working to drink a cup of water. Defendant claimed that Plaintiff Guillory was not entitled to a break, was "leaning," and fired him mid-shift. Defendant did not subject its Hispanic employees to these same restrictions or rules.

50. Plaintiffs were subjected to discipline and rules based on their race (African-American) that Defendants nonblack employees were not subjected to – which ultimately lead to Plaintiffs' loss wages, benefits and employment. Further, Defendant also targeted other Black employees and unlawfully discharged them during this same time frame

51. Upon information and belief, no cell phone policy existed that justified Mr. Antoine's termination. Further, prior to Mr. Antoine's termination, Defendant had never before terminated an employee for a cell-phone violation.

52. Further Defendant knew that Plaintiff White had not violated its no call, no show policy or any other policy related to his missed time from work.

53. Further, Defendant blatantly admitted to Plaintiff Moton that it preferred to work with Hispanic employees – a direct statement of race discrimination.

54. Defendant's disparate treatment towards each of the Plaintiffs was open and obvious and wreaks of the very pattern and practice that Title VII and Section 1981 seek to eliminate.

55. Further, in subjecting its Black employees to discrimination as described herein, Defendant also subjected Plaintiff White to disability discrimination by its unilateral assessment of Plaintiff White's health condition and ability to perform his job based on racial and superficial

reasons to which it did not subject its Hispanic employees

### IV.   CAUSES OF ACTION

**A.   Race Discrimination pursuant to 42 U.S.C. §1981 as to all Plaintiffs**

56.   Plaintiffs repeat and re-allege by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

57.   Defendant, through its agents, supervisors, or employees violated Plaintiffs' civil rights under 42 U.S.C. §1981 by intentionally and/or unintentionally interfering with Plaintiffs' employment because of their race (African-American). Defendant's violations include but are not limited to, discrimination against Plaintiffs in the application of worksite rules and in Defendant's termination of Plaintiffs' employment.

58.   Defendant, through its agents, supervisors, or employees discriminated against Plaintiffs based on their race, which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiffs' employment.

59.   This intentional interference of wages, benefits and employment toward Plaintiffs consisted of discrimination of a continuous nature.

60.   The above-described acts on Defendant's part caused Plaintiffs substantial injury and damage.

61.   The above-described acts on Defendant's part were malicious, reckless, and intentional and consisted of discrimination of a continuous nature.

**B.   Race Discrimination pursuant to Title VII as to all Plaintiffs**

62.   Plaintiffs repeat and re-allege by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

63.   Defendant, through its agents, supervisors, or employees violated Plaintiff Antoine

and White's civil rights in violation of Title VII by intentionally and/or unintentionally interfering with their employment because of their race (African-American).

64. Defendant's violations under Title VII include but are not limited to, discrimination against Plaintiff Antoine who Defendant denied a lead position although qualified for same, subjected to a racial slur, targeted for mistreatment and termination, and terminated for a nonexistent cell phone policy while other employees of a different race were not subjected to the same. Further Defendant failed to take action when Plaintiff Antoine complained of a racist comment and racism and instead retaliated against him by switching his shift and then terminating him for a nonexistent cell phone policy.

65. Defendant's violations under Title VII also include but are not limited to, discrimination against Plaintiff White who defendant allegedly terminated for a no-call, no-show after forcing him to obtain a fit-for-duty exam for discriminatory reasons while other employees of a different race were not required to do the same, failing to take action when employees and management subjected Plaintiff White to racial harassment and racial comments regarding the foods that African-Americans supposedly eat and more. Defendant's consent of racial harassment and racial discrimination against Plaintiff White lead to loss wages, benefits, enjoyment of employment, and employment for Plaintiff White. Defendant also targeted other Black employees and unlawfully discharged them.

66. Defendant's violations under Title VII also include but are not limited to discrimination against Plaintiffs Guillory and Moton who were subjected to disparate treatment in the application of Defendant's rules, work requirements, and termination criteria.

67. Upon information and belief, Defendant replaced each of the named Plaintiffs herein with Hispanic employees upon their termination of employment.

68. This intentional interference consisted of discrimination of a continuous nature.

69. Defendant, through its agents, supervisors, or employees discriminated against Plaintiffs based on their race, which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiffs' employment.

70. The above-described acts on Defendant's part caused Plaintiffs substantial injury and damage.

71. The above-described acts on Defendant's part were malicious, reckless, and intentional and consisted of discrimination of a continuous nature. Upon information and belief, Defendant also targeted other Black employees and unlawfully discharged them.

C. **Retaliation pursuant to Title VII and Section 1981 as to Plaintiff Antoine**

72. Plaintiff Antoine repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

73. After complaining to management of maltreatment, Plaintiff Antoine was subsequently and repeatedly harangued, ignored, disciplined, and ultimately terminated.

74. As herein alleged, Defendant illegally retaliated against Plaintiff Antoine because he complained of maltreatment and discrimination. Defendant had no legitimate business reasons for any of such acts.  Each act of retaliation is in violation of 42 U.S.C. §1981 and Title VII's anti-retaliation provisions.

75. As a direct and proximate result of Defendant's willful, malicious, knowing, reckless and intentional discrimination and retaliation against him, Plaintiff Antoine has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff Antoine is thereby entitled to general and compensatory damages in amounts to be proven at trial.

76. The above-described acts on Defendant's part were undertaken in violation of 42 U.S.C. §1981 and Title VII and proximately caused Plaintiff Antoine substantial injuries and damages.

**D.** **Disability Discrimination pursuant to The Americans with Disabilities Act as Amended as to Plaintiff White**

77. Plaintiff White repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates them here as though fully set forth.

78. Plaintiff White is protected under the ADAAA because of his disability as defined by the ADAAA (real, perceived and/or record of). As described herein, Plaintiff White was forced to obtain a fit-for-duty exam because Plaintiff White requested a ride to the jobsite instead of walking. Defendant's Hispanic employees who also requested a lift to the job site were not required to obtain a fit-for-duty exam for doing so like Plaintiff subjected Plaintiff White to disparate treatment which lead to the loss of wages, incurred costs and humiliation because of Defendant's perception of black people and Plaintiff's alleged "disability."

79. Further, throughout Plaintiff White's short stint of employment, Plaintiff White was subjected to continuous discriminatory comments at work concerning his size and weight and the food he and Black people allegedly ate by Defendant's Hispanic employees and Defendant's foreman.

80. In this context, Plaintiff's weight and/or size is considered a disability under the ADA whereas here Defendant believed that it significantly altered Plaintiff's ability to work.

81. Defendant, through its agents, supervisors, or employees violated Plaintiff White's civil rights in violation of the Title I of the Americans with Disabilities Act ("ADA"), by intentionally subjecting him to a hostile and harassing work environment, disparate treatment, and by interfering with Plaintiff White's employment because of his weight and/or size -"disability:"

perceived and/or real as defined by the ADA.

82. Defendant, through its agents, supervisors, or employees violated Plaintiff White's civil rights in violation of the Title I of the Americans with Disabilities Act ("ADA"), by forcing Plaintiff White to obtain a fit-for-duty release while other employees of a different race were not required to do the same, frustrating Plaintiff White's efforts to obtain a fit-for-duty release, refusing to reasonably accommodate him and refusing, in good faith, to engage in the interactive dialogue concerning him obtaining a fit-for-duty release.

83. Defendant then terminated Plaintiff White under the pretext of absenteeism because Defendant did not wish to work with Plaintiff White based in part or whole on his weight and/or size (disability).

84. Defendant's discrimination, through its agents, supervisors, or employees, led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff White's employment.

85. Defendant's acts were malicious, reckless, and intentional and consisted of discrimination of a continuous nature.

86. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against him, Plaintiff White has suffered and will continue to suffer actual damages, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff White is thereby entitled to general, compensatory and liquidated damages in amounts to be proven at trial.

## V.   DAMAGES

87. Because of Defendant's discrimination and retaliation as set forth herein, Plaintiffs have suffered, suffer and will continue to suffer economic losses including past and future lost wages

and benefits as well as humiliation, mental anxiety and stress, and other damages. Accordingly, Plaintiffs seek all general, special, incidental, liquidated and consequential damages all of which amounts will be proved at trial.

88. Additionally, because of Defendant's reckless, malicious and intentional acts as set forth herein, Plaintiffs seek punitive damages against Defendant.

89. Additionally, because of Defendant's unlawful and discriminatory conduct, it has been necessary for Plaintiffs to retain the undersigned attorney to represent them in the causes of actions set forth herein. Further, Plaintiffs have agreed to pay their attorney reasonable attorney's fees for the preparation and trial of these causes.

90. As a further consequence of Defendant's unlawful and discriminatory conduct, Plaintiffs have incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve their ability to earn a living. Accordingly, Plaintiffs seek all general, special, incidental and consequential damages as shall be proven at trial.

91. Plaintiffs also seek pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiffs also seek post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VI.   JURY DEMAND

92. Plaintiffs request a trial by jury in this matter.

## VII. PRAYER

WHEREFORE, premises considered, Plaintiffs pray that Defendant be required to appear and answer this Complaint, and that on final trial, Plaintiffs each be awarded judgment against Defendant for:

a. All liquidated and unliquidated damages to which each Plaintiff proves he is entitled pursuant to this Complaint and the causes of action set forth herein, any amendments thereto with interest;

b. Actual and compensatory damages within the jurisdictional limits of the Court;

c. Exemplary and/or punitive damages as allowed by law;

d. Reasonable and necessary attorney's fees, as allowed by law;

e. Pre and post-judgment interest, as allowed by law;

f. Costs; and

g. Any and all other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
State Bar No. 24013218
Federal Bar No. 34512
The Murphy Law Practice, PLLC
2101 Citywest Blvd, Ste. 100
Houston, Texas 77042
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email:marjorie@themurphylawpractice.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFFS, ERIC ANTOINE, JACORDIAN GUILLORY, TERRANCE MOTION AND RODERICK WHITE**